# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Joseph Odish, Cranbrook Capital
Consulting Group, LLC,

        Plaintiffs,

v.

Apple, Inc., Timothy Cook,
Northrop Grumman Corp., Wesley
Bush, Nuance Communications,
Inc. Cognitive Code Corp., Leslie
Spring, Mimi Chen, John Chen,
Salvatore Difazio, Robert Rosen,
International Business Machines
Corp, Joel Bock, Patrick Miller,
Oracle Corp., U.S. Dentons,

        Defendants.

_____/

Case No. 15-cv-11955
Hon. Judith E. Levy
Mag. Judge Mona K. Majzoub

## MEMORANDUM AND ORDER
## DISPOSING OF [10], [12] & [16]

Plaintiffs Joseph Odish and Cranbrook Capital Consulting Group,

LLC initiated this lawsuit on June 1, 2015, and filed their first

amended complaint against seventeen individual and corporate

defendants, bringing claims involving violations of securities, anti-trust,

and civil rights laws, fraud, and conversion, as well as retaliation

against a federal whistleblower, and a claim of patent manipulation. (Amended Compl. Dkt. 5, Aug. 24, 2015.) Summons for each of the defendants were issued on June 4, 2015 (Dkt. 6), although no notice of service appears yet on the docket. Nonetheless, counsel for defendants Cognitive Code, Salvatore Difazio, Leslie Spring, Mimi Chen, and John Chen (collectively, "Cognitive Code defendants") has filed an appearance in this matter. (Dkt. 11.)

Before the Court is the Cognitive Code defendants' motion to dismiss this case and sanction plaintiffs. (Dkt. 10). Also before the Court are plaintiffs' request to strike their first amended complaint and motion for leave to file a second amended complaint. (Dkt. 12, 16).

For the reasons provided below, defendants' motion is GRANTED in part and DENIED in part, and plaintiffs' motion is GRANTED in part and DENIED in part. The Court also grants the Cognitive Code defendants leave to move the Court for an award of fees and costs.

## I.   BACKGROUND

Plaintiffs Joseph Odish, an attorney licensed in Michigan, and his wholly owned company, Cranbrook Capital Consulting Group, LLC, are no strangers to the Eastern District of Michigan. This matter follows

2

seven prior cases brought by one or both of these plaintiffs in this District, including one, No. 14-cv-14886, before this Court.[1] As for active litigation, in addition to the above-captioned matter, which the Court will on occasion refer to as "Odish 8" when necessary for clarity, plaintiff Odish has renewed an earlier *qui tam* action, Odish 4, against

---

[1] (1) *Joseph Odish, Sahar Abroo, and Cranbrook Capital Consulting Group, LLC v. Robert Rosen, Rosen and Associates, P.C. and John Does 1-50*, No. 13-cv-13799, filed Sept. 6, 2013, terminated Apr. 17, 2014—dismissed for lack of subject matter jurisdiction, ("Odish 1"); (2) *Joseph Odish and Cranbrook Capital Consulting Group, LLC v. Morganthaler Ventures, Gary Morganthaler, Gaye Morganthaler, David Jones, John Does 1-20, and Peregrine Semiconductor, Inc.*, No. 13-cv-14026, filed Sept. 19, 2013, consolidated with (3) No. 14-cv-10283 on Feb. 12, 2014, terminated Mar. 11, 2015—dismissed for lack of personal jurisdiction, ("Odish 2&3"); (4) *Cranbrook Capital Consulting Group, LLC, United States of America ex rel. Joseph Odish v. Cognitive Code Corp., Inc., Northrop Grumman Corp., Inc., Nuance Communications, Inc., Leslie Spring, Mimi Chen, John Chen, Sal Difazio, Robert Rosen, and John Bourbeau, Jr.*, 14-cv-10736, filed Feb. 18, 2014, terminated Dec. 03, 2015—notice of voluntary dismissal, ("Odish 4"); (5) *Joseph Odish and Cranbrook Consulting Group, PLLC v. Cognitive Code Corporation, Inc, John Bourbeau, Jr., Mimi Chen, Sal Difazio, John Chen, Leslie Spring, and Apple, Inc.*, No. 14-cv-12382, filed June 18, 2014, terminated June 25, 2014—notice of voluntary dismissal, ("Odish 5"); (6) *Joseph Odish and Cranbrook Capital Consulting Group, LLC v. Dick & Miller, P.C., Patrick Miller, Don Davidson, MEI Defense Technologies, Inc., and Intellitar, Inc.*, No. 14-cv-12571, filed July 1, 2014, terminated Nov. 10, 2014—notice of voluntary dismissal ("Odish 6"); (7) *Joseph Odish and Cranbrook Capital Consulting Group, LLC v. Nuance Inc., Apple Inc, Northrop Grumman Corp., Inc., Timothy Cook, Thomas Beaudoin, Wesley Bush, Cognitive Code Corp., Inc., Leslie Spring, Robert Rosen, Howard Friedman, Salvatore Difazio, John Chen, and Mimi Chen*, No. 14-cv-14886, filed Dec. 23, 2014, terminated May 15, 2015—dismissed under Fed. R. Civ. P. 4(m) for failure to prosecute ("Odish 7").

the corporate defendants in Odish 8, and that matter, No. 15-cv-13395 ("Odish 9"), is also presently before this Court.[2]

The above-captioned matter—and, indeed much of the afore mentioned litigation—arises from a business relationship that began between plaintiffs and the Cognitive Code defendants in early 2011 and ended in March 2012. (*See*, *e.g.*, Am. Compl. ¶¶ 10, 261, 268.) Plaintiffs assert claims and injuries arising from Odish's allegedly having become "a shareholder and board member of a tech startup Cognitive Code[] that in the previous year had become a vendor and approved subcontractor for Northrop Grumman." (*Id.* at ¶ 10).) From what the Court is able to glean from an amended complaint rife with incomplete sentences, pleading paragraphs whose numbers are anything but sequential, and references to unnumbered exhibits, plaintiffs' claims center around a technology called "Silvia," purportedly created by Cognitive Code and allegedly similar to the software known as "Siri" featured in products sold by Apple, Inc. (*See*, *e.g.*, Am. Compl. ¶ 216). Apparently, defendants Apple, Nuance, and International Business

---

[2] *Joseph Odish v. Northrup Grumman Corp., Cognitive Code Corp., Inc., Nuance Communication, Inc., and Apple, Inc.*, No. 15-cv-13395, filed Sept. 28, 2015, ("Odish 9").

Machines Corp., presumably along with Apple CEO, defendant Cook, are implicated in this matter because of alleged conflicts of interest swirling around Apple's acquisition of the "Siri" software from Nuance and an alleged patent infringement by the owners of "Siri" against the owners of "Silvia." (*See*, *e.g.*, *id.* at ¶¶ 342, 271.) The patent in dispute was purportedly issued on February 28, 2012, as No. 8126832. (*Id.* at ¶ 714.)[3] Plaintiffs also assert conspiracy and fraud on the part of defendants Spring and Bock with regard to this and related patents. (*Id.* at 715-16.) The Cognitive Code defendants are alleged to be vendors and approved subcontractors of defendant Northrop Grumman and its CEO defendant Bruce. (*See*, *e.g.*, *Id.* at ¶¶ 10, 14-15, 18.)

Plaintiffs allege that Odish and Cognitive Code executed a Letter of Intent in March 2011 ("LOI") that obligated Odish to pay $175,000 to Cognitive Code in exchange for equity in the company—a tech startup at the time—and to participate in business engagements with the company. (*See*, *e.g.*, *id.* at ¶¶ 15-17.) Plaintiffs allege that the parties

---

[3] There is a patent assigned to Cognitive Code Corp. that lists Leslie Spring as the inventor associated with this patent number. It was filed on March 6, 2008, and published on Sept. 25, 2008. No activity is associated with this patent on Feb. 28, 2012. USPTO Patent Full-Text and Image Database (available at http://patft.uspto.gov/netahtml/PTO/search-bool.html).

executed an addendum to the LOI ("Addendum") on March 18, 2011, and that this addendum provided "dual signature rights" for defendant Spring and Odish to control business initiatives of Cognitive Code. (*Id.* at ¶¶ 197-98.) Additionally, the amended complaint asserts that on April 10-11, 2011, plaintiffs received from the Cognitive Code defendants documentation of their stock interests in defendants' company via email. (*Id.* at ¶¶ 212-13.) At this same time, plaintiffs allege, Odish, who had initially served as "in-house counsel" to Cognitive Code, "left his practice of law and dedicated his full time to Cognitive Code, spending over 2000 hours during the following year" as an employee for the company. (*Id.* at ¶ 19.) According to the complaint, shortly thereafter, on April 17, 2011, Odish, his former associate John Bourbeau, and Cognitive Code signed an agreement ("April 17 Agreement") regarding option rights for 75,000 shares. (*Id.* at ¶¶ 375-76). Plaintiffs also allege that the shares they were granted outright or to which they were given options were non-dilutable. (*See*, *e.g.*, *id.* at ¶¶ 376, 459-60, 469, 486.)

The complaint describes a souring of the relationship with defendants beginning sometime late in 2011, and culminating in legal

demands in March 2012. (*See*, *e.g.* *id.* at 456-62). These disputes ultimately led plaintiffs to initiate a lawsuit in the Central District of California on May 6, 2013, seeking a 37.5 percent share in Cognitive Code, Odish's "dual signature" rights under the Addendum, and a board seat. (Def. Mem. Exs. 1, 3 at 4; *see also* section I.A *infra*.)

Plaintiffs allege that their former attorney, defendant Rosen, "was involved in the conspiracy" to "strip Odish of his rights"—presumably with regard to his purported shares and signature authority in Cognitive Code—and also participated in a conspiracy to defraud the United States Government vis-à-vis its contracts with the named corporate defendants in health care, criminal justice, and defense contracts. (*See*, *e.g.*, Am. Compl. ¶¶ 22-28.) Plaintiffs also refer repeatedly to the first *qui tam* action, Odish 4, in their amended complaint, alleging attorney misconduct against defendant Rosen, a criminal conspiracy by all defendants against United States government interests, and actions taken by all defendants to manipulate and fraudulently register patents. (¶¶ 32, 40, 232-36, 243, 282, 339, 607, 651-56, 706-25.)

## A. The California Case

Plaintiffs reference this lawsuit, C.D. Cal. No. CV 12-09069 ("California Case"), numerous times in their amended complaint. (*See*, *e.g.*, Am. Compl. ¶¶ 9, 11, 34, 502, 527, 552, 635, 647, 654, 708, 720, 723, 774.) The California Case was filed by Odish, John Bourbeau, and Cranbrook Capital Consulting Group, LLC on October 22, 2012, against the Cognitive Code Defendants and was dismissed on May 27, 2015, when the court granted defendants' motion for summary judgment. The dismissal was affirmed on July 20, 2015, in response to plaintiffs' Rule 60 motion. (Def. Mem. Exs. 3, 7,8; C.D. Cal. No. CV 12-09069.)[4] The California court held, and this Court adopts as facts alleged in the pleadings, that, for reasons grounded in the California State statute governing attorney conduct, the LOI and April 17, 2011 agreement referred to in the amended complaint were void and unenforceable. (Def. Mem. Ex. 3 at 10.) For similar reasons, the California court held that the Addendum and the April 10, 2011 email were also

---

[4] "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Global Eng'g, LLC v. Satyam Computer Servs. Ltd.*, No. 10-15142, 2014 WL 7013607, at *4 n.5 (E.D. Mich. Dec. 11, 2014) (quoting *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir.1997)).

unenforceable. (*Id.* at 12-13.) The California lawsuit brought by plaintiffs against the Cognitive Code defendants is pending appeal before the Ninth Circuit Court of Appeals, but will not be fully briefed until February 26, 2016. Case No. 15-55950, 9th Cir., NOA filed June 19, 2015.

The California court held that none of the asserted agreements and emails implying entitlement to shares of Cognitive Code, rights to patents controlled by defendants, or decision-making authority regarding Cognitive Code were valid. (Def. Mem. Exs. 3, 8.) The California court determined that the alleged agreements and entitlements at the center of that litigation were the result of attorney misconduct in violation of California law, including a breach of Odish's fiduciary duties toward his Cognitive Code clients, and were therefore invalid. (*Id.* Ex. 3 at 9-10.) The California court also reasoned that Odish was not acting in his clients' (the Cognitive Code defendants') interests, because assertions that he was entitled to non-dilutable shares of Cognitive Code and decision-making authority "would impair Cognitive Code's ability to attract further investment" and "impede Cognitive Code's ability to conduct its affairs." (*Id.* Ex. 3 at 12.)

9

Finally, since the California court declared the alleged agreements between Odish and the Cognitive Code defendants to be voidable, it also dismissed the plaintiffs' causes of action related to those alleged agreements. (*Id.* Ex. 3 at 18.) These claims included various contract torts, a prayer for injunctive relief to enforce the terms of the agreements and cancel stocks and warrants issued without Odish's authority, as well as claims predicated on his alleged status as a stockholder. (*Id.*) The latter claims in particular "fail[] because the agreements for Cognitive Code stock are voidable." (*Id.*) Finally, the court dismissed claims for "intentional misrepresentation," "negligent misrepresentation," and "suppression and concealment of the fact that Spring lacked authority to enter into the contracts" because plaintiffs put forth no evidence to support those claims, and because Odish's own conduct "was manifestly unreasonable." (*Id.* Ex. 3 at 19.)

The California court made additional findings relevant to the present matter when it ruled on plaintiffs' Rule 60 motion. Namely, in evaluating new evidence raised by Odish—a 2015 declaration by attorney Jason Green—the court explained that information therein was available to plaintiffs in 2013 when Green provided his first

10

declaration, and, in any event, there was no demonstration of due diligence—that the information provided by Green could not have been discovered at the time he submitted his 2013 declaration. (*Id.* Ex. 8 at 6-7.) Finally, the court found no instances of fraud, misrepresentation, or misconduct on the part of any of the defendants, who include the Cognitive Code defendants, Rosen, Northrop Grumman, Nuance, the Morganthalers, and Apple. (*Id.* Ex. 8 at 7.)

### B. Litigation before this Court

On September 28, 2015, three days after the Cognitive Code Defendants filed their reply brief in this matter, plaintiff Odish once more took aim against the corporate defendants, firing off another arrow, Odish 9, from his litigation quiver. (*See* note 2 *supra*.) Plaintiff admits early in Odish 9 that the action is a renewal of Odish 4. (Odish 9, Dkt. 1 at 2.) Adhering to what appears to have become his *modus operandi*, observed now for the third time in matters before this Court, Odish has already filed a notice of intent to amend Odish 9 before the proverbial ink has dried on the original complaint or service of the original complaint on any defendants—and in this case, even before a

summons has been issued. (*Id.*, Dkt. 4, Oct. 12, 2015; Odish 8, Dkt. 5; Odish 7, Dkt. 2.)

### C. Causes of Action

As best the Court can determine, plaintiffs bring the following claims in the amended complaint:

1. "Respondeat Superior/Agency" against all defendants (Am. Compl. ¶¶864-68) ;

2. Declaratory Judgment to Seat a Grand Jury against Defendants Northrop Grumman, Nuance, Cognitive Code, and Apple (*id.* at ¶¶ 869-76);

3. Violation of 42 U.S.C. § 1985 against the Cognitive Code Defendants, Rosen, and "their employees, agents and co-conspirators" for preventing FBI and SEC agents from conducting an investigation (*id.* at ¶¶ 877-83);

4. Duplicative of Count 3 (*id.* at ¶¶ 884-90);

5. Violation of 42 U.S.C. § 1983 against the same defendants as Counts 3 and 4 for an unspecified constitutional or statutory violation (*id.* at ¶¶ 891-96);

6. Fraud against the Cognitive Code defendants and Rosen for "[a]ll of the misrepresentations and omissions detailed above. . . ." (*id.* at ¶¶ 897-914);

7. [Cause of Action 15] Constructive Trust related to the Property and Securities Alleged by Plaintiffs (*id.* at ¶¶ 915-20);

8. [Cause of Action 16] Damages against all defendants for all actions alleged (*id.* at 921-23);

9.  [Cause of Action 17] Violation of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 *et seq.* against defendants Apple, Nuance, Northrop Grumman, "and their agents and employees" (*id.* at ¶¶ 924-35);

10. [Cause of Action 25] Violations of § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* against the individual defendants and Northrop Grumman (*id.* at ¶¶ 936-43);

11. [unnumbered] Violation of Whistleblower Protection for Employees of Publicly Traded Companies, 18 U.S.C. § 1514A against defendants Cognitive Code, Northrop

Grumman, Apple, and Nuance "and their agents" (*id.* at ¶¶ 944-50); and

12. [unnumbered] Violation of 53 U.S.C. § 297, Patent Manipulation, against the Cognitive Code defendants (*id.* at ¶¶ 951-58).

## II.   DEFENDANTS' MOTIONS

Defendants move the Court to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 41(a)(1)(B). They also move the Court to identify Odish as a "vexatious litigant" and impose a sanction barring him from filing any additional civil actions in this District without leave of court. (Dkt. 10 at 1-3).

Plaintiffs oppose the motion in a brief that asserts defendants have brought their motion to distract the Court from their own wrongdoing. (Pl. Oppos. 8-12.) Plaintiffs oppose defendants' assertion of claim and issue preclusion on the grounds that their counts of fraud, whistleblower retaliation, "equitable estoppel," and "detrimental reliance" have not been asserted previously in any litigation against

these parties.[5] (*Id.* at 12-13.) Plaintiffs oppose the imposition of sanctions, but also argue that should the Court contemplate a sanction limiting their rights to file claims in the District, it should exclude from such a sanction the right to re-file the *qui tam* action—which plaintiffs have already refiled as Odish 9. (*Id.* at 13-14.). Plaintiffs argue, without citing any caselaw in support, that defendants' motion is an untimely Rule 56 motion. (*Id.* at 14-15.) And, finally, they assert that public policy demands consideration of the rights of whistleblowers to press their actions. (*Id.* at 15-16.)

The Cognitive Code defendants reiterate in their reply brief that plaintiffs' claims are entirely precluded through the California court's ruling, because the alleged facts all occurred between 2011 and 2013, well before the California court issued its final judgment, and either were raised, or should have been raised, in the context of that litigation. (Reply Mem. 1-5.) Defendants also assert that plaintiffs did not oppose their arguments regarding subject-matter jurisdiction and the applicability of Rule 41(a)(1)(B). (*Id.* at 5-6.) Finally, defendants cite

---

[5] The Court has found no instance or reference to "equitable estoppel" or "detrimental reliance" in plaintiffs' amended complaint.

plaintiffs' request to strike their first amended complaint due to "errata," as well as the hundreds of attached, but unreferenced, exhibits, as evidence of the vexatious quality of their litigation efforts. (*Id.* at 6-7 (citing Dkt. 12).)

## A. Legal Standards

The grounds raised by the Cognitive Code defendants for dismissal present different legal standards. The Court addresses first the distinct nature of the legal standards governing motions to dismiss under Rule 12(b)(1), compared with Rule 12(b)(6), and then addresses the legal standards governing the doctrines of issue and claim preclusion underlying defendants' motion to dismiss. Legal standards for Rule 41(a)(1)(B) follow.

## 1. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

"'[A] plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007). Constitutional standing requires three elements: (1) that the plaintiff has suffered "an invasion of a legally protected interest, which is

concrete and particularized . . . and . . . actual or imminent"; (2) that the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that a favorable decision must be likely to redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted) (alteration in original). When a court's subject-matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden to prove jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

A motion to dismiss under Rule 12(b)(1) can be on a facial or factual basis. *See*, *e.g.*, *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). The facial attack preserves "safeguards to the plaintiff," in that allegations in the complaint are presumptively true, while under a factual attack, the "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977). The Sixth Circuit has explained the crux of a 12(b)(1) motion and its distinction from other dispositive motions as follows:

> [I]n a Rule 12(b)(6) motion in which matters outside the record are relied upon as they were here, the moving party . . . had the burden of showing there are no genuine issues as to any material facts, as the motion shall be treated as one for summary judgment. Fed.R.Civ.P. 56(c). Conversely, *where subject matter jurisdiction is challenged under Rule 12(b)(1), . . . the plaintiff has the burden of proving jurisdiction in order to survive the motion. Perhaps even more importantly, when a Rule 12(b)(6) motion is converted to a Rule 56 motion for summary judgment, the court, upon finding genuine issues as to material facts, must deny the motion; whereas on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes.*

*Id.* at 1134-35 (quoting *Rogers v. Stratton Industries, Inc.,* 798 F.2d 913 (6th Cir. 1986) (emphasis in original)).

When Rule 12(b)(6) is raised alongside Rule 12(b)(1) in a motion to dismiss, courts must first address the Rule 12(b)(1) issue before addressing the validity of the claim itself. *Moir*, 895 F.2d at 269 (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). The preclusive effect of any factual findings made in support of a Rule 12(b)(1) ruling are limited to the jurisdictional question. *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A dismissal under Rule 12(b)(1) may afford the plaintiff the opportunity to re-plead the matter to cure the lack of subject-matter jurisdiction. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

## 2. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Moreover, documents attached to a plaintiff's pleading are incorporated into the pleading, but if such an attachment provides facts that conflict with the pleadings, the facts alleged in the attachment prevail over those alleged in the complaint. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (citing cases).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

While a court is generally constrained to the pleadings when considering a motion to dismiss under Rule 12(b)(6), matters of public

record, including the existence of judicial proceedings and court opinions may be taken into account. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). Moreover, "a defendant may introduce certain pertinent documents" referenced by the plaintiff in his pleadings but not attached to them, and these documents may be considered in a 12(b)(6) motion when they are central to the claims. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

### 3. Issue and Claim Preclusion

Issue and claim preclusion, often referred to as *res judicata* and collateral or direct estoppel,[6] are doctrines governing the effect of a prior judgment in foreclosing present litigation—or relitigation—of a matter. *Heylinger*, 126 F.3d at 852 (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)). These doctrines arose in common law and rest in principles of judicial economy most succinctly described as "a losing litigant deserves no rematch after a defeat fairly

---

[6] "[I]n the interests of precision and clarity," the Court will "refrain from using the predecessors of those terms, whose meanings have become so convoluted." *Heylinger v. State University and Community College System of Tennesse*e, 126 F.3d 849, 852 (6th Cir. 1997) (quoting *Barnes v. McDowell*, 848 F.2d 725, 728 n.5 (6th Cir. 1988)).

suffered." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S.Ct. 1293 (2015) (quoting *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104 (1991)). Issue preclusion prevents relitigation of a matter already determined by a final judgment, even if the issue arises in a different claim. *Heylinger*, 126 F.3d at 852 (citing *Migra*, 465 U.S. at 77 n.1); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "foreclos[es] litigation of a matter that has never been litigated, because of a determination that it should have been advanced in an earlier suit," and it applies irrespective of whether the subsequent litigation raises the same issues. *Id.* (quoting *Migra*, 465 U.S. at 77 n.1); *Taylor*, 553 U.S. at 892. In other words, these related doctrines "encourage[] reliance on judicial decisions, bar[] vexatious litigation, and free[] the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

Both issue and claim preclusion can be properly raised under Rule 12(b)(1) to challenge the court's subject-matter jurisdiction. *See, e.g., In re Graves*, 282 F. App'x 432 (6th Cir. 2008); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 1997). These issues can also be addressed under a Rule 12(b)(6) motion to

dismiss. *See, e.g., Donohue ex rel. Estate of Donohue v. United States*, No. 1:05 CV 175, 2006 WL 2990387, at *3 (S.D. Ohio Oct. 18, 2006) (citing *Westwood Chemical Co., Inc. v. Kulick,* 656 F.2d 12247, 1227 (6th Cir.1981)). If the doctrine is applied to a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the preclusive effect of the court's ruling is limited to the issue of jurisdiction and does not prevent the plaintiff from repleading to cure the lack or jurisdiction or raise the matter in a court that does have jurisdiction. *Ritchie*, 15 F.3d at 598.

> A claim is precluded when four required elements are present:
>
> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 880 (6th Cir. 1997)). In particular, the fourth element is satisfied if "the claims arose out of the same transaction or series of transactions or whether the claims arose out of the same core of operative facts." *Id.* at 773-74 (quoting *In re*

*Micro-Time Mgmt. Sys., Inc.*, 983 F.2d 1067 (Table), 1993 WL 1067, at
*5 (6th Cir. 1993)).

Issue preclusion entails the following elements:

(1) the question in this case is the same as the one raised in
the earlier litigation; (2) the answer given in the earlier
litigation was necessary to the decision; (3) that decision was
a final judgment on the merits; and (4) the affected party
had a "full and fair opportunity" to litigate the issue in the
prior litigation.

*United States v. United Technologies Corp.*, 782 F.3d 718, 725 (6th Cir.
2015) (citing *Kosinski v. C.I.R.*, 541 F.3d 671, 675 (6th Cir. 2008). The
legal theories in which the issues arose in the prior litigation, compared
to the subsequent litigation, are immaterial to issue preclusion, as long
as the above conditions are met. *Id.* The essence of issue preclusion is to
"prevent[] the second court from 'deciding the same factual issues that
were decided earlier.'" *Id.* at 729 (quoting *Falconer v. Meehan,* 804 F.2d
72, 76 (7th Cir. 1986)).

A judgment retains its preclusive effect even when an appeal is
pending. *Smith v. S.E.C.*, 129 F.3d 356, 363 n.7 (6th Cir. 1997); *Erebia
v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1216 n.1 (6th Cir.
1989). Importantly, the preclusion applies "not only to bar the parties

from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action." *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) (emphasis in original) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948). Because of the powerful effect these doctrines can have on "grounds and defenses not previously litigated," courts are warned to invoke them "only after careful inquiry." *Brown v. Felsen*, 442 U.S. 127, 132 (1979).

Finally, courts may raise claim preclusion *sua sponte* and dismiss a matter under Rule 12(h)(3) if there is no subject-matter jurisdiction. *Agg v. Flanagan*, 855 F.2d 336, 344 (6th Cir. 1988) (Contie, J. dissenting) (discussing cases and predicting that "as courts become increasingly concerned with their interests in forestalling repetitive litigation, this action will become more common").

### 4. The Two-Dismissal Rule

Federal Rule 41(a)(1)(B) provides that in the case of a voluntary dismissal by a plaintiff, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." This

two-dismissal rule has the effect of preventing a further action on the same claim. Wright & Moore, 9 Fed. Prac. & Proc. Civ. § 2368 (3d ed. 1997). Rule 41(a)(1)(B) applies to situations in which a prior action is dismissed before process is served, and only when the defendants in both actions "are the same, substantially the same, or in privity in both actions." *Id.*; *Evans v. Laborers' Dist. Council & Contractors' Pension Fund of Ohio*, 602 F. App'x 608, 615 (6th Cir. 2015). The two-dismissal rule was instituted for the practical necessity of "prevent[ing] an unreasonable use of dismissals" to excessively harass defendants by bringing multiple suits against them that do not reach a resolution. *Evans*, 602 F. App'x at 614 (internal quotation omitted).

### B. Analysis

#### 1. Subject-matter jurisdiction

Defendants plainly raise their 12(b)(1) motion on factual grounds, rather than facial ones. They argue that plaintiffs lack constitutional standing because there is no injury in fact traceable to defendants' actions—that is, all of plaintiffs' claims derive from allegations that they own Cognitive Code stock, but that these claims are precluded by

the California court's judgment. (Def. Mem. 16-18.) Defendants' assertions plainly contradict plaintiffs' repeated claims of entitlement to, or actual ownership of, shares in Cognitive Code. Plaintiffs counter that the California Case has no preclusive effect here, because "a majority of those claims arose after last amended complaint and include actionable conduct since this action was filed." (Reply Mem. 12-13.) Plaintiffs assert Fed. R. Civ. P. 15 and *Lawson v. FMR, LLC*,[7] as legal authority for their position, but they do not specify which claims from which amended complaint in which proceeding before which court saves this matter, Odish 8, from dismissal for lack of subject-matter jurisdiction through claim preclusion.

The Court must resolve these material issues of fact in order to determine if subject-matter jurisdiction exists to hear this case.

## a. Impact of the California Litigation

As recited in section I.A *supra*, the California Case features prominently in plaintiffs' amended complaint, yet plaintiffs did not

_____

[7] 134 S.Ct. 1158 (2014) (holding that whistleblower protection under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A(a), extended to employees of private contractors and subcontractors serving public companies).

attach the opinions issued by the California court granting defendants summary judgment and affirming that decision to their complaint. The Cognitive Code defendants attach to their motion to dismiss both decisions in the California Case. In holding that "a defendant may introduce certain pertinent documents if the plaintiff fails to do so," the Sixth Circuit explained that "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner*, 108 F.3d at 89. The Sixth Circuit adopted the Seventh Circuit's approach in such situations and considers "[d]ocuments that a defendant attaches to a motion to dismiss [] part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012). Additionally, if such an attached document is "inconsistent with the allegations of the complaint, the exhibit controls." *Carrier Corp.*, 673 F.3d at 441 (quoting *Mengel Co. v. Nashville Paper Prod. & Specialty Workers Union, No. 513*, 108 F.3d 86, 89 (6th Cir. 1955)).

The Sixth Circuit has cautioned against using statements in an attachment to trump alleged facts in the pleadings when it is "not a legally dispositive document," *id.* at 441-42, but here the attachment is a final decision—*and* a reconsideration affirming that decision by a federal court—involving many of the same facts at issue in this matter. Therefore, the Court holds that the facts found by the California court and holdings made therein that contradict assertions in the pleadings are to control over the pleadings.

### b. Claims and Issues Against the Cognitive Code Defendants Precluded by the California Decision

Claims raised in the above-captioned matter will be dismissed for lack of subject-matter jurisdiction if they are precluded by the California Case. To reiterate, the required elements for preclusion are:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Browning*, 283 F.3d at 771-72. The first element has been satisfied by the discussion in sections I.A and II.B.1.a *supra*.

As for the second element, the California Case was brought by plaintiffs Odish and Cranbrook Capital Consulting[8] against the Cognitive Code defendants (Cognitive Code Corp., Leslie Spring, Mimi Chen, John Chen, and Salvatore Difazio). Therefore, the second element is satisfied regarding claims brought here against these defendants.

Turning next to the fourth element, that "the claims arose out of the same transaction or series of transactions or whether the claims arose out of the same core of operative facts," *Id.* at 773-74, the Court finds that plaintiffs' amended complaint largely addresses the same transactions and arises from the same core operative facts as the California Case. First, the California court found voidable the series of so-called agreements dated between March and April 2011—the LOI, Addendum, April 10 email, and April 17 Agreement—which are all central to plaintiffs' claims here against the Cognitive Code defendants. Second, the California court also held that since those four agreements were voidable, all claims plaintiffs asserted that arose from those

---

[8] The third plaintiff in the California Case, John Bourbeau, has since appeared as a defendant in two of the cases brought by plaintiffs in this District. *See* note 2 *supra*. Since he is not a party to this matter, the Court does not address preclusion with regard to him.

agreements were without merit. Third, the California court reconsidered its decision less than two months after plaintiffs filed this matter and just one month before plaintiffs filed their amended complaint, and rejected plaintiffs' "newly discovered evidence" submitted on June 16, 2015, in support of their Rule 60 motion as containing neither new information nor information that was inaccessible to plaintiffs earlier in the litigation. These findings by the California court demonstrate that the core of operative facts surrounding the transactions between plaintiffs and the Cognitive Code defendants were duly presented and fully litigated, and that even *after* plaintiffs filed this matter, the California court held that there were no new or newly discovered facts that warranted a different outcome. In other words, in so far as this case seeks redress for transactions between plaintiffs and Cognitive Code between early 2011 and July 2015, when the California court issued its opinion on the Rule 60 motion, there is an identity of the causes of action between this matter and the California Case for the purposes of claim preclusion.

Finally, for similar reasons, the third element for preclusion—the presence of issues, which were or should have been litigated in the prior

action—is also satisfied. In this matter, as far as the Court can discern from plaintiffs' amended complaint and their briefing in opposition to defendants' motion, their claims against the Cognitive Code defendants arise from their assertions that Odish is a shareholder in Cognitive Code and has been wrongly denied his entitlements derived from that status and other promises made by defendants. Furthermore, even concerns related to patents owned by or controlled by defendants were addressed in the California Case (*see* Def. Mem. Ex. 3 at 3); therefore, any claim derived from defendants' patents should have been raised in the California Case as well.

The analysis regarding which issues are precluded by the California Case further defines the scope of what is precluded here. To reiterate, the elements of issue preclusion are:

> (1) the question in this case is the same as the one raised in the earlier litigation; (2) the answer given in the earlier litigation was necessary to the decision; (3) that decision was a final judgment on the merits; and (4) the affected party had a "full and fair opportunity" to litigate the issue in the prior litigation.

*United Technologies Corp.*, 782 F.3d at 725. Having already established that element three is satisfied, element four is also satisfied, as

plaintiffs' issues were subjected to cross-claims for summary judgment, as well as a motion to reconsider. Regarding the first two elements, the questions at the heart of plaintiffs' claims here are the same as the claims adjudicated by the California court: namely, did the alleged transactions and agreements between plaintiffs and the Cognitive Code defendants dating from March and April 2011 entitle Odish to be a shareholder, employee, or board member of defendants' corporation, and did those alleged agreements provide him with decision-making authority in the company. The California court answered these questions unequivocally, "no"; therefore, any claims in the present matter are precluded if they require an answer different from the California court's to any of those questions.

Plaintiffs' efforts to oppose the preclusive effect of the California Case are unavailing. First, their invocation of Fed. R. Civ. P. 15, which governs amendments of pleadings, is inapplicable because preclusion applies if the issues were raised *or could have been raised* in the prior litigation, and attaching new legal theories to the core operative facts does not cure their preclusion problem. *United Technologies Corp.*, 782 F.3d at 728-29 ("Issue preclusion does not disappear merely because the

losing party puts on a better case the second time around.") (citing cases). Second, plaintiffs argue that their claims regarding whistleblower retaliation are not subject to preclusion, but they fail to explain how they have whistleblower standing, aside from the precluded reliance on the voidable agreements, as an employee under 18 U.S.C. § 1514A, or the expanded definition held by *Lawson*, 134 S. Ct. at 1176. Third, plaintiffs' representations in their documents filed since the California court's July 2015 denial of their Rule 60 motion are particularly disingenuous as they persist in asserting rights and entitlements flatly rejected by the California court, rather than distinguishing for this Court which of their assertions stands independent from the rulings in the California Case. (*See*, *e.g.* Pl. Oppos. Mem. 4 (asserting Odish's status as "an employee, Shareholder and Board Member of Cognitive Code in March 2011" and his "dual signature and review rights"); Am. Compl. ¶¶ 15-16 (asserting the same).)

### c. Plaintiffs' Causes of Action Against the Cognitive Code Defendants

Plaintiffs raise twelve "causes of action" in their complaint, which the Court addresses in turn for subject-matter jurisdiction.

1. "Respondeat Superior/Agency" against all defendants:

This is styled as a cause of action, but it merely states the association of the individually named defendants to their corporate employers and is not otherwise a justiciable claim, as it specifies no injury attributable to defendants that the Court could redress. The Court lacks subject-matter jurisdiction over this "claim".

2. Declaratory Judgment to Seat a Grand Jury against Defendants Northrop Grumman, Nuance, Cognitive Code, and Apple;

Fed. R. Crim. P. 6 governs grand juries, and that rule only pertains to criminal proceedings (*id.* Rule 1), which this is not. The above-captioned matter is not the correct form for seeking an indictment or otherwise prosecuting criminal matters. The Court lacks subject-matter jurisdiction over this "claim".

3. Violation of 42 U.S.C. § 1985 against the Cognitive Code Defendants, Rosen, and "their employees, agents and co-conspirators" for preventing FBI and SEC agents from conducting an investigation;

34

Section 1985(1) prohibits "two or more persons" to act with "force, intimidation, or threat" to interfere with the ability of federal officers to carry out their duties. And while § 1985 is to be construed to have broad applicability, *see*, *e.g.*, *Windsor v. The Tennessean*, 719 F.2d 155, 161 (6th Cir. 1983), a plaintiff must be an individual who holds "any office, trust, or place of confidence under the United States" to bring a claim under § 1985(1) regarding impediments to her ability to carry out her duties. *Lewis v. News-Press & Gazette Co.*, 782 F. Supp. 1338, 1342 & n.5 (W.D. Mo. 1992) (discussing cases). Plaintiffs have not alleged that they hold such an office in the United States; therefore, they lack standing on this claim and the Court lacks subject-matter jurisdiction.

4. Duplicative of Count 3;

The Court lacks subject-matter jurisdiction for the same reasons as in Count 3.

5. Violation of 42 U.S.C. § 1983 against the same defendants as Counts 3 and 4 for an unspecified constitutional or statutory violation;

Claims brought under § 1983 must show "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) [that] the deprivation was caused by a person acting under color of state

law." *St. v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). A cognizable claim under § 1983 brought against a private entity must show that such a defendant was "exercis[ing] powers which are traditionally exclusively reserved to the state." *Id.* (quoting *Ellison v. Garbarino*, 48 F. 3d 192, 195 (6th Cir. 1995)). Plaintiffs have asserted neither of these two prongs to set forth a claim under § 1983; therefore, there is no cognizable claim, leaving the Court without subject-matter jurisdiction on this claim.

> 6. Fraud against the Cognitive Code defendants and Rosen for "[a]ll of the misrepresentations and omissions detailed above. . . .";

As explained in section II.B.1.a-b *supra*, the California court held that claims dependent on the transactions between plaintiffs and the Cognitive Code defendants from March and April 2011 were voidable. Here, plaintiffs claim that their assertions of "fraud, misrepresentation, and [] omission" stem from implied contractual and contractual relationships with defendants. (Am. Compl. ¶ 900.) Such issues are precluded; therefore the Court lacks subject-matter jurisdiction with regard to the Cognitive Code defendants.

7. [Cause of Action 15] Constructive Trust related to the Property and Securities Alleged by Plaintiffs;

Plaintiffs assert claims on property—presumably stock, options, and revenues from patents—"they were unlawfully stripped of by Defendants." (Am. Compl. ¶ 916.) These claims are precluded because the California court already determined that plaintiffs' claims to such property are void. The Court lacks subject-matter jurisdiction for this claim.

8. [Cause of Action 16] Damages against all defendants for all actions alleged;

Plaintiffs seek damages arising from representations "made intentionally, willfully and maliciously and have caused Plaintiff to suffer humiliation, outrage and indignation." (Am. Compl. 922.) The Court cannot discern what concrete and particularized injury is described by this cause of action, and in so far as defendants' alleged actions are grounded in the core of operative facts adjudicated by the California court, they are precluded. The Court lacks subject-matter jurisdiction over this "claim".

9. [Cause of Action 17] Violation of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 *et seq.* against defendants Apple,

37

Nuance, Northrop Grumman, "and their agents and employees";

As far as the Court can glean from plaintiffs' amended complaint, their injury from any anti-competitive actions by defendants is predicated upon Odish being a shareholder at Cognitive Code. Any cause of action predicated on such a fact is precluded by the California Court's holdings. The Court lacks subject-matter jurisdiction over Cause of Action 17.

10. [Cause of Action 25] Violations of § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* against the individual defendants and Northrop Grumman;

Plaintiffs allege here that defendants "[m]ade untrue statements of a material fact or omitted to state a material fact . . . or . . . [e]ngaged in acts, practices and a course of business that operated as a fraud and deceit upon Plaintiffs in connection with their purchase and sale of Cognitive Code Corporation Securities." (Am. Compl. ¶ 929.) Such allegations are precluded by the California court's holdings that plaintiffs' agreements with defendants were voidable, because that court's determination is an essential fact underlying the validity of

these claims. The Court therefore lacks subject-matter jurisdiction on this count as well.

> 11. [unnumbered] Violation of Whistleblower Protection for Employees of Publicly Traded Companies, 18 U.S.C. § 1514A against defendants Cognitive Code, Northrop Grumman, Apple, and Nuance "and their agents";

As explained in section II.B.1.b *supra*, plaintiffs have not explained how they have whistleblower standing without reliance on issues precluded by the California court's ruling that the March and April 2011 agreements between Odish and the Cognitive Code defendants are voidable. The Court lacks subject-matter jurisdiction for this claim against the Cognitive Code defendants.

> 12. [unnumbered] Violation of 35 U.S.C. § 297, Patent Manipulation, against the Cognitive Code defendants.

The Patent Code provides, in part, that an individual "who enters into a contract with an invention promoter and who is found by a court to have been injured by any material false or fraudulent statement or representation" may recover for the actual damages or a statutory amount in a civil action against the invention promoter. 35 U.S.C. § 297(b). Such a claim is predicated upon there being a valid contract

regarding the patent in question, and the California court determined that plaintiffs did not have cognizable rights to any patents promoted by the Cognitive Code defendants. Therefore, a precluded issue underlies this claim, and the Court lacks subject-matter jurisdiction.

In summation, the Court lacks subject-matter jurisdiction on each and every claim raised by plaintiffs in their amended complaint against the Cognitive Code defendants and hereby grants defendants' motion to dismiss under Rule 12(b)(1).

## 2. The Cognitive Code Defendants' Rule 12(b)(6) Motion

Since the Court lacks subject-matter jurisdiction on all claims brought against the Cognitive Code defendants, the Cognitive Code defendants are dismissed and the analysis need go no further. However, even if the claims were not dismissed for lack of subject-matter jurisdiction, the Court also finds that, for the same reasons explained in section II.B.1.c *supra*, plaintiffs have in all cases failed to state a claim upon which relief can be granted, and the claims against the Cognitive Code defendants would also be dismissed under Rule 12(b)(6).

### 3. Defendants' Rule 41(a)(1)(B) Motion

Fed. R. Civ. P. 41(a)(1)(B) provides an alternative avenue to address the preclusive nature, not of matters decided by a previous court, but rather of matters previously raised and voluntarily dismissed by plaintiffs. In the interests of judicial economy, the Court briefly addresses the applicability of Rule 41(a)(1)(B)—the two-dismissal rule— to the nine cases plaintiffs have filed against many of the same defendants in this District in less than three years.

The two-dismissal rule operates when there is a second voluntary dismissal of the same claim against defendants who "are the same, substantially the same, or in privity in both actions." Wright & Moore, 9 Fed. Prac. & Proc. Civ. § 2368 (3d ed. 1997); *Evans*, 602 F. App'x at 615. Here, plaintiffs voluntarily dismissed a prior case in this district, Odish 5 (*see* note 1 *supra*), against the Cognitive Code defendants, Apple, Inc. and John Bourbeau on June 22 and June 25, 2014, by notices of voluntary dismissal prior to service. Plaintiffs voluntarily dismissed two other lawsuits in this district. Odish 6 was voluntarily dismissed on November 4, 2014, on the day following an order to show cause why the case should not be dismissed for failure to prosecute. However, that case

was brought against different defendants than those in the present case, Odish 8, or Odish 5. By contrast, Odish 4 was a *qui tam* action brought against the Cognitive Code defendants, along with defendants to the current action, Northrop Grumman Corp., Nuance Communications, Inc., and Rosen, and it was dismissed voluntarily on December 3, 2014, also on the heels of an order to show cause and prior to service. (Case No. 14-cv-10736, Dkt. 31-32.)

The question before the Court, then, is whether this second voluntary dismissal of a *qui tam* action against the same Cognitive Code defendants as in Odish 5 qualifies under Rule 41(a)(1)(B) because it was "based on or include[ed] the same claim." The Sixth Circuit has used the phrase "based on the same transaction" to explain the meaning of "same claim" as used in Rule 41(a)(1)(B). *Evans*, 602 F. App'x at 614; *Demsey v. Demsey*, 488 F. App'x 1, 3 (6th Cir. 2012) (citing *Anderson v. Aon Corp.,* 614 F.3d 361, 365 (7th Cir. 2010); *Randall v. Merrill Lynch,* 820 F.2d 1317, 1318–19 (D.C.Cir.1987)). Such an interpretation comports with the Second Restatement of Judgments, which explains, in the context of effects of a judgment, that "the claim extinguished includes all rights of the plaintiff to remedies against the defendant

42

with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24 (1982).

Although the types and causes of action in Odish 4 and Odish 5 are distinct—a *qui tam* case asserting injury on behalf of the federal government in the case of Odish 4, and a host of federal statutory as well as common-law claims in Odish 5—the two cases recount substantially similar transactions between plaintiffs and defendants. Both rely on the narrative described in section I *supra* regarding the relationship between plaintiffs and the Cognitive Code defendants, and the alleged subsequent false dealings between the Cognitive Code defendants and various government contractors over patents tied to the Siri and Silvia technologies. (No. 14-cv-12382, Dkt. 1; No. 14-cv-10736, Dkt. 1).

While the Court finds there is a sufficient basis to determine that Rule 41(a)(1)(B) applies to Odish 4 and Odish 5, with the voluntary dismissal of Odish 4 on December 3, 2014 acting as an adjudication on the merits, the Court will not rule on this basis. Seeing as the Court lacks jurisdiction to consider the merits of the present matter, the

preclusive nature of these prior cases and claims does not influence the outcome here. In any event, such a determination would either be an additional, redundant reason the Court lacks subject-matter jurisdiction, or an inappropriate consideration of the merits.

## III.   IMPACT OF CLAIM PRECLUSION ON SUBJECT-MATTER JURISDICTION REGARDING OTHER DEFENDANTS

From the analysis in section II.B.1 *supra* of claims and issues precluded by the California court's litigation, the Court turns to the question of to what extent these holdings must direct a dismissal for lack of subject-matter jurisdiction under Rule 12(h)(3). The remaining defendants have not been served in this case, nor have they appeared on their own accord, as the Cognitive Code defendants, to accept the case and oppose the claims against them. Nonetheless, under Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

The Court declines to dismiss this action against the remaining parties for lack of subject-matter jurisdiction. First, there is no motion before the Court setting forth the facts and legal arguments to challenge subject-matter jurisdiction. In order to find that any of the

44

California court's holdings or findings of facts acted to preclude claims raised here against the remaining defendants, there would need to be showing that these remaining defendants were in privity with the Cognitive Code defendants such that the California Case had served as an adjudication with regard to any claims against them as well. The Court finds that a more prudent course of action regarding the remaining defendants is to allow plaintiffs an opportunity to amend their complaint to more clearly articulate the justiciable claims that may still lie against these defendants. Nonetheless, should a second amended complaint still be "so attenuated and insubstantial as to be absolutely devoid of merit," the Court will not hesitate to dismiss the case *sua sponte* against the remaining defendants as well. *Keeran v. Office of Pers. Mgmt.*, 827 F.2d 770 (6th Cir. 1987) (quoting *Hagans v. Lavine*, 415 U.S. 528, 536-7 (1974)).

## IV.   PLAINTIFF'S REQUEST TO STRIKE AND MOTION FOR LEAVE TO AMEND

Plaintiffs filed their complaint in this matter on June 1, 2015, and filed an amended complaint on August 24, 2015. (Dkt. 1, 5). On August 31, 2015, five days after defendants filed their motion, plaintiffs sought

45

to strike their amended complaint through document styled as a "Notice of Errata and Privileged Information in First Amended Complaint: Request for Removal of Document and it Being Struck from the Record." (Dkt. 12). Plaintiffs' counsel (Odish) explained that their first amended complaint should "be stricken from the record on basis of innocent Errata and Privileged and potentially prejudicial information." (*Id.*). On September 2, 2015, plaintiffs submitted their motion for leave to file a second amended complaint, but without attaching the proposed document as required by E.D. Mich. L.R. 15.1. (Dkt. 16). Defendants oppose plaintiffs' motion. (Dkt. 28).

Amendment of pleadings is governed by Fed. R. Civ. P. 15, which states in part that "[a] party may amend its pleading once as a matter of course within: (A) 21 days of serving it, or (B) . . . 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Other amendments may be made "only with the opposing party's written consent or the court's leave." *Id.* at (a)(2). As Odish has already learned from the order issued by Hon. Paul J. Komives, U.S. Magistrate Judge, in Odish 2, "Rule 15(a)(1) does not provide for a *right* to file a second amended pleading under any

46

circumstances." *Odish et al. v. Peregrine Semiconductor, Inc. et al.*, No. 13-cv-14026, Dkt. 49, E.D. Mich. Nov. 17, 2014, at 1 (quoting *Stuart v. Fisher*, No. 1:02-cv-00020, 2013 WL 4591005, at *5 (D. Idaho Aug. 27, 2013); citing *Hurst v. Powell*, No. 7:13-CV-1, 2013 WL 4763743, at *2 (M.D. Ga. Sept. 4, 2013)).

Rule 15(a)'s mandate "is to be heeded"—that leave to amend "shall be freely given when justice so requires." *Humantech, Inc. v. Caterpillar, Inc.*, No. 11-14988, 2014 WL 346010, at *1 (E.D. Mich. Jan. 30, 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Sixth Circuit has reinforced the "liberality in allowing amendments to a complaint." *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987). If the motion is to be denied, "there must be 'at least some significant showing of prejudice to the opponent.'" *Id.* (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). "In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the

amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).

Here, to grant plaintiffs leave to amend—at least with regard to the Cognitive Code defendants—would be to turn a blind eye to their well-documented (*see* notes 1-2 *supra*) pattern of ineffective lawsuits pressing increasingly well-worn claims, at least an essential subset of which have now reached final adjudication through the California Case. Moreover, since the Cognitive Code defendants already prevailed on summary judgment before the California court regarding the transactions at the heart of plaintiffs' complaint, and no matter how plaintiffs would seek to rename their claims and recast the facts, there is no plausible objective expectation that they can defeat the substantial preclusive effect of the California court's ruling. *See Dubuc v. Green Oak Twp.*, 312 F.3d 736, 751 (6th Cir. 2002) (holding that district court did not abuse discretion to deny leave to amend a second time in part because the claims were precluded by a prior decision).

Indeed, the California court's specific finding in its July 2015 decision on plaintiffs' Rule 60 motion, that there were no new facts or facts that could not have been discovered with diligence that would

change the outcome of its ruling, is particularly compelling here. Plaintiffs filed their amended complaint a month after the California court issued its Rule 60 opinion, and they had not yet served any defendants when they issued their amended complaint; therefore, they had ample opportunity, and were under no time pressure, to amend their complaint in a way that carefully articulated the claims not adjudicated by the California court and independent of fact findings made by that court. Moreover, the inclusion in the amended complaint of allegations directly contradicted by the California court's rulings is at best a gross oversight and at worst a deliberate misrepresentation to the Court in violation of Rule 11. Should plaintiffs prevail before the Ninth Circuit on their appeal pending in the California Case, the impact of the two-strike rule as discussed in section II.B.3 *supra* would still significantly curtail their ability to raise issues not precluded by rule 41(a)(1)(B).

Additionally, the Court understands that plaintiffs may have failed to include their second amended complaint due to a misunderstanding with the Court. (Dkt. 16.) However, for the reasons provided, plaintiffs cannot cure the jurisdictional problems of their

49

claims against the Cognitive Code defendants; therefore, this incident of misunderstanding does not otherwise persuade the Court to grant leave to amend the complaint against these defendants.

As for the claims against the remaining defendants, while there may be a colorable avenue for the Court to identify the privity alleged by plaintiffs between the remaining defendants and the Cognitive Code defendants, the standard applied in such a decision requires finding that "the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine,* 415 U.S. 528, 536–37 (1974)). This may not be an impossible hurdle with plaintiffs' claims here, but at this stage of the litigation—when the remaining defendants have not filed their appearance let alone moved to dismiss the matter—a *sua sponte* dismissal here would not be "in accordance with our traditional adversarial system of justice because [it] cast[s] the district court in the role of 'a proponent rather than an independent entity' . . . [is] unfair to the litigants and ultimately waste[s], rather than save[s] judicial resources." *Tingler v. Marshall*, 716 F.2d 1109, 1111 (6th Cir. 1983),

abrogated by statute on other grounds, (quoting *Franklin v. State of Oregon, State Welfare Division,* 662 F.2d 1337, 1342 (9th Cir. 1981)).

Therefore, in the interests of preserving the adversarial process, the Court grants plaintiffs leave to amend their complaint. However, given the extensive impact of claim and issue preclusion here as well as the significant problems in form and content in the first amended complaint, this leave is granted subject to the following conditions:

1. There can be no factual allegations in the amended pleadings that contradict this ruling, contradict the final adjudication of the California Case, or rely on answers to questions that contradict the California court's rulings or this ruling.

2. Plaintiffs may allege no claims against the Cognitive Code defendants, as they are dismissed from this case.

3. Plaintiffs may not exceed twenty pages in filing their second amended complaint, and these twenty pages must otherwise entirely comport with L.R. 5.1 governing the filing of papers in this Court.

Failure to abide by any of the above conditions will constitute a violation of the Court's express order.

## V.   SANCTIONS

Defendants have also moved the Court to impose sanctions on plaintiffs. In particular, they move the Court to restrict plaintiffs'

ability to file future lawsuits in this District. (Def. Mem. 21-24.) The Court deems defendants' motion to be a motion under Rule 11; however, Rule 11(c)(2) requires that such motions "be made separately from any other motion. . . ." The Court strikes this portion of defendants' motion as to form, and separately issues an order pursuant to Rule 11(c)(3) for plaintiffs to show cause.

The Court also hereby lifts the ban imposed by the order of October 8, 2015 on substantive filings in this matter.

IT IS SO ORDERED.

Dated: October 28, 2015          s/Judith E. Levy
       Ann Arbor, Michigan       JUDITH E. LEVY
                                 United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 28, 2015.

                                 s/Felicia M. Moses
                                 FELICIA M. MOSES
                                 Case Manager